IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

     v.                                                 19-CR-6072FPG

THOMAS ALONZO BOLIN,

          Defendant.

---

### RESPONSE TO DEFENDANT'S OBJECTIONS TO
### PRE-SENTENCE INVESTIGATION REPORT

      The United States of America, through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, Brett A. Harvey, Assistant United States Attorney, of counsel, hereby makes and files its response to the defendant's objections to the Pre-Sentence Investigation Report.

                **I.**        **FACTUAL AND PROCEDURAL BACKGROUND**

      In late March 2019, the Federal Bureau of Investigation (FBI) began an investigation of the defendant, THOMAS ALONZO BOLIN, and other members of the "Odin's Warriors" Facebook group for possible violations of federal civil rights and firearms laws. The investigation was initiated after an individual known as "Ragnar Odinson," a member of the "Odin's Warriors" Facebook group, made threatening statements on Facebook messenger indicating a desire to re-enact the attacks on two mosques in Christchurch, New Zealand in the United States.

      As part of the investigation, the FBI interviewed the defendant on March 30, 2019. During the interview, the FBI asked the defendant if he possessed any firearms in New York

State. The defendant falsely stated that he did not. The FBI recovered a Mossberg 12-gauge shotgun in the defendant's bedroom at 34 Third Avenue in Greece, New York.

On May 14, 2019, the defendant pleaded guilty to a one-count Information charging a violation of 18 U.S.C. § 1001(a)(2) (making a material false statement) before this Court. The defendant is scheduled to be sentenced on July1, 2019.

On May 31, 2019, the Probation Office issued a Pre-Sentence Investigation Report (PSR). On June 10, 2019, the defendant filed objections to the PSR. Specifically, the defendant objected to (1) paragraphs 17 through 33 of the PSR, which summarized the FBI's investigation of the defendant and Ragnar Odinson; (2) the inclusion of an eight-level increase under Guidelines § 2B1.1(b)(16)(B) for possession of a firearm in connection with the offense of conviction; (3) the inclusion of a special condition of supervised release requiring the defendant to participate in the Computer and Internet Monitoring Program; (4) the inclusion of a special condition of supervised release prohibiting the defendant from associating with "any known white supremacist members, known white supremacist affiliates or any organization that advocates engaging in criminal activity;" and (5) the inclusion of a special condition of supervised release prohibiting the defendant from maintaining or creating a user account on any "social networking site." (Defense Objections, pp. 7-20).

On June 24, 2019, the Probation Office issued a revised PSR, which changed the heading for paragraphs 17 through 33 of the PSR to "Background Information," removed the eight-level enhancement under Guidelines § 2B1.1(b)(16)(B), removed the proposed special condition prohibiting the defendant from associating with white supremacist members and affiliates, and removed the proposed special condition prohibiting the defendant from maintaining or creating a user account on any "social networking site."

## II. LEGAL DISCUSSION

### A. OFFENSE CONDUCT

The defendant contends that the PSR incorrectly identifies the offense conduct. (Defense Objections, at pp. 7-8). The defendant concedes that the information in paragraphs 17 through 33 of the PSR "help[s] explain why law enforcement interviewed" him, but argues that this information is protected speech under the First Amendment and not part of his "offense conduct." (Defense Objections, at p. 7). The defendant asks this Court to either delete paragraphs 17 through 33 of the PSR (hereinafter, "the disputed paragraphs") or change the PSR heading to identify those paragraphs as "background information." (Defense Objections, at p. 8).

As noted above, the revised PSR changed the heading for the disputed paragraphs from "Offense Conduct" to "Background Information." This issue, therefore, is moot.

In any event, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; see also U.S.S.G. § 1B1.4. In light of this clear legal authority, the disputed paragraphs are properly included in the revised PSR and may be considered by this Court at sentencing.

### B. APPLICABILITY OF GUIDELINES § 2B1.1(B)(16)(B)

The revised PSR removed the eight-level enhancement under Guidelines § 2B1.1(b)(16)(B). The government agrees with removal of this enhancement. This issue, therefore, is moot.

**C.     COMPUTER AND INTERNET MONITORING PROGRAM (CIMP)**

The defendant opposes imposition of the special condition relating to the Computer and Internet Monitoring Program (CIMP), arguing that it is not sufficiently related to the offense of conviction. (Defense Objections, at pp. 10-11). In addition, the defendant claims the CIMP condition is vague. (Defense Objections, at pp. 11-13). Finally, the defendant requests that, in the event this Court imposes the CIMP condition, the costs associated with the program be waived. (Defense Objections, at pp. 13-15).

"Under 18 U.S.C. § 3583(d), the imposition of certain conditions of supervised release is mandatory, but '[d]istrict courts also have discretion to impose other, non-mandatory conditions of supervised release,' which are commonly referred to as 'special conditions.'" United States v. Browder, 866 F.3d 504, 510 (2d Cir. 2017) (quoting United States v. Reeves, 591 F.3d 77, 80 (2d Cir. 2010)). A district court may impose special conditions of supervised release

> to the extent such conditions (1) are *reasonably related* to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from future crimes of the defendant; and (D) the need to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is *reasonably necessary* for the purposes set forth above and are consistent with any pertinent policy statements by the Sentencing Commission.

U.S.S.G. § 5D1.3(b) (emphasis added); see also 18 U.S.C. § 3583(d); United States v. McLaurin, 731 F.3d 258, 262 (2d Cir. 2013) ("A sentencing court may impose conditions of supervised release so long as they are reasonably related to any one or more of the specified factors"); United States v. Myers, 426 F.3d 117, 123-24 (2d Cir. 2005).

4

"[S]entencing courts have 'broad discretion to tailor conditions of supervised release to the goals and purposes outlined in § 5D1.3(b).'" United States v. Amer, 110 F.3d 873, 883 (2d Cir. 1997) (quoting United States v. Abrar, 58 F.3d 43, 46-47 (2d Cir. 1995)). A district court must "'make an individualized assessment when determining whether to impose a special condition of supervised release, and . . . state on the record the reason for imposing it.'" United States v. Eaglin, 913 F.3d 88, 94 (2d Cir. 2019) (quoting United States v. Betts, 886 F.3d 198, 202 (2d Cir. 2018)).

In this case, the CIMP condition is reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public. As detailed in the PSR, on March 15, 2019, a gunman attacked two mosques in Christchurch, New Zealand, shooting and killing 50 worshippers and civilians, and injuring 50 others. (PSR at ¶ 20). The FBI later learned that the defendant – an avowed supporter of white supremacist ideology (PSR at ¶¶ 19 and 22) – was communicating via Facebook with an individual known as Ragnar Odinson, a member of the defendant's Facebook group "Odin's Warriors," who had made threatening statements on Facebook Messenger calling for a re-enactment of the Christchurch attacks in the United States. (PSR at ¶ 21). On March 15, 2019, Odinson indicated that he was willing to "do something" the following week in Baltimore, Maryland, and encouraged another individual (not the defendant) to buy firearms and ammunition. (PSR at ¶ 21).

Between March 10, 2019, and March 19, 2019, the defendant used Facebook to make statements consistent with white supremacist ideology and references to the Christchurch attacks. (PSR at ¶¶ 23-24). In those statements, the defendant referred to Muslims as "Islamic filth," "Islamic trash," "Muslim rats" and "sandnigger[s]"; and spoke of an impending "war"

5

and the need to fight back against Muslims. (PSR at ¶¶ 24, 27-28, 33). The defendant – who read the "manifesto" of the Christchurch gunman and agreed with its theory about white genocide (PSR at ¶¶ 20, 24 and 32) – posted two photographs: one with the caption, "how muslims see white people," which depicted a white male pointing a shotgun toward the camera; and one with the caption, "how white people see muslims," which consisted of a still photograph from the Christchurch gunman's video of the attack showing a long gun being pointed downrange toward a mosque. (PSR at ¶¶ 24 and 25).

One of the individuals with whom the defendant discussed the Christchurch attacks was Ragnar Odinson. (PSR at ¶ 26). When the defendant told Odinson that the Christchurch gunman "killed 40 muslims," Odinson responded with a heart emoji and said, "Lovely." (PSR at ¶ 26). Odinson sent links to the Christchurch gunman's manifesto and a video of one of the attacks to the Facebook group, which included the defendant. (PSR at ¶ 26). On March 16, 2019, the defendant told Odinson that he (the defendant) had broken his arm. (PSR at ¶ 29). Odinson responded, "there goes all that shit then," and the defendant replied, "[o]nly takes one arm to fire a glock." Odinson then stated, "I guess I'll do this shit my self. I'm not waiting months and months or a week. It was supposed to be done by Halloween." (PSR at ¶ 29). Odinson also stated, "Words aren't going to help. Violence is the key." (PSR at ¶ 30). Based on the context of these statements (particularly the defendant's reference to needing only one arm to fire a Glock handgun and Odinson's reference to violence), it appears that the defendant and Odinson were talking about committing a shooting.[1]

---

1 The government does not contend that this conversation was about re-enacting the Christchurch attacks. Rather, it is apparent from Odinson's reference to the act being "done by Halloween" that he was referring to a different act, not a re-enactment of the Christchurch attacks (which occurred the day before this conversation on March 15, 2019).

On March 12, 2019, the defendant sent three photographs via Facebook Messenger, which depicted a total of four firearms. (PSR at ¶ 39). In one of the images, the defendant was wearing a red devil mask and pointing a shotgun at the camera. (PSR at ¶ 39).

On March 30, 2019, the FBI interviewed the defendant. During the interview, the defendant falsely denied that he possessed any firearms in New York State. (PSR at ¶ 37). The FBI later recovered – during a consent search of the defendant's bedroom – a Mossberg 12-gauge shotgun loaded with five rounds of ammunition, as well as additional rounds of ammunition. (PSR at ¶ 41). This was the same shotgun that was depicted in the photograph with the defendant wearing a red devil mask. (PSR at ¶ 41). As detailed in the PSR, the defendant also possessed a loaded 9mm handgun and marijuana during a traffic stop in Missouri on January 20, 2017, (PSR at ¶ 59), and possessed a firearm on school property in Kansas on a weekend in October 2009. (PSR at ¶ 62).

Based on the facts and circumstances in this case, the CIMP condition is justified and appropriate. The facts supporting the CIMP condition include the defendant's direct online connection to Ragnar Odinson, who made statements about re-enacting the Christchurch attacks in the United States and appeared to discuss committing an unrelated shooting with the defendant; the defendant's embrace of white supremacist ideology and his violent hostility to minority groups, particularly Muslims; the defendant's sympathetic view of the Christchurch gunman and the ideological "rationale" for the Christchurch attacks; the defendant's stated belief that there is "a war brewing" and that the Christchurch attacks are a "small pice [sic] of a bigger picture"; the defendant's recent and historical access to firearms; and the fact that the defendant – who was not prohibited from possessing a firearm – lied to the FBI about his possession of the shotgun found in his bedroom closet.

Of course, the government acknowledges the defendant's free speech rights under the First Amendment. The government, however, is not seeking to use the CIMP condition to interfere with the defendant's free speech rights by policing his views on politics, race, religion, or current events. Rather, the CIMP condition is necessary to ensure that the defendant does not move beyond simply exercising his First Amendment rights and begin to threaten acts of violence, plan acts of violence or incite others to commit acts of violence.

Contrary to the defendant's claims, the law does not require a "connection between [the CIMP condition] and offense of making a materially false statement to law enforcement officers." (Defense Objections, at pp. 11 and 24). A district court may impose a condition of supervised release "that is 'reasonably related' to several of the statutory factors governing the selection of sentences, 'involves no greater deprivation of liberty than is reasonably necessary' for several statutory purposes of sentencing, and is consistent with Sentencing Commission policy statements." United States v. Sofsky, 287 F.3d 122, 126 (2d Cir. 2002) (quoting 18 U.S.C. § 3583(d)). The law does not require "a direct nexus between the offense conduct and the computer search condition." United States v. Bare, 806 F.3d 1011, 1019 (9th Cir. 2015) (citing United States v. T.M., 330 F.3d 1235, 1240 (9th Cir. 2003) ("The supervised release conditions need not relate to the offense for which [the defendant] was convicted as long as they satisfy any of the conditions set forth [in § 3583(d)(1)]")); see also United States v. Hayes, 283 Fed.Appx. 589, 594 (9th Cir. 2008) (computer conditions justified in prosecution for making false statement in acquisition of firearm because conditions were reasonably related to defendant's history and characteristics, and to protecting defendant's ex-wives, where defendant had history of sending threatening text messages to former wives).

In any event, the record in this case demonstrates a nexus between the offense of conviction and the CIMP condition. As detailed in the factual basis of the plea agreement and the revised PSR, the defendant's online posts and messages (involving Ragnar Odinson, the impending "war" with Muslims, and the defendant's possession of a firearm, among others) triggered the FBI investigation of the defendant for possible violations of federal civil rights and firearms laws. The offense of conviction is based on the defendant's material false statements in relation to the FBI investigation of his online activity. The government submits that these facts and circumstances provide a sufficient nexus between the offense of conviction and the CIMP condition.

In addition, the deprivation of liberty resulting from the CIMP condition is no greater than necessary to achieve the objectives of sentencing. The proposed condition calls for monitoring only, not a complete or even qualified ban on computer usage or access to the internet. Moreover, the CIMP condition is not impermissibly vague. The CIMP condition specifies that "[a]ny such monitoring or examinations shall be designed to avoid, as much as possible, reading any privileged information or any private material that is not illegal or reasonable likely to lead to illegal material or evidence related to illegal activity." (PSR at p. 17). The government understands that the technology employed by the CIMP enables the Probation Office to tailor the scope of its monitoring and searches of any computer(s) or other internet-capable device(s).

The government is aware that the Probation Office considers a defendant's ability to pay any costs associated with the CIMP and that, under the appropriate circumstances, the costs can be waived. As of this writing, the defense has failed to explain why the defendant –

an able-bodied 22-year-old male, who has held nine jobs over the last two and a half years[2] – qualifies to have the CIMP costs waived. (PSR at ¶¶ 93-101). The government respectfully requests that the defendant be required to seek and maintain employment before a decision is made to waive the CIMP costs.

D.   **ASSOCIATION WITH WHITE SUPREMACISTS**

The revised PSR removed the proposed special condition prohibiting the defendant from associating with known white supremacists and affiliates. The government agrees with removal of this proposed special condition.

E.   **PROHIBITION OF SOCIAL NETWORKING SITES**

The revised PSR removed the proposed special condition prohibiting the defendant from creating or maintaining a user account for any social networking sites. The government agrees with removal of this proposed special condition.

DATED:   Rochester, New York, June 24, 2019.

JAMES P. KENNEDY, JR.
United States Attorney

BY:   s/ Brett A. Harvey
BRETT A. HARVEY
Assistant United States Attorney
United States Attorney's Office
Western District of New York
500 Federal Courthouse
100 State Street
Rochester, New York 14614
585/399-3949
Brett.Harvey@usdoj.gov

---

[2] The defendant left these jobs for a variety of reasons, including "transportation issues," "scheduling conflicts," he did not think one job "was a good fit," and he had an argument with his manager. (PSR at ¶¶ 93-101).

TO:    Sonya A. Zoghlin, Esq.
         Counsel for the Defendant

         Erin N. Wong
         United States Probation Officer