**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES**

        **v.**

**THOMAS ALONZO BOLIN,**

                          *Defendant.*

**Docket No. 19-cr-6072**

**Reply to Court's Proposed
Conditions of Supervised
Release**

On May 14, 2019, defendant Thomas Alonzo Bolin pleaded guilty to a one-count information charging him with knowingly and willfully making a material false statement in violation of 18 U.S.C. § 1001(a)(2). A Presentence Investigation Report [hereinafter PSR] was prepared (docket item 16) and, after reviewing its recommendations, Mr. Bolin filed his objections with the Court (Docket Item 19). A revised PSR (docket item 23) was prepared on June 24, 2019, that addressed many of Mr. Bolin's concerns, but still recommended that the Court impose, as a special condition of supervision, that Mr. Bolin participate in the Computer and Internet Monitoring Program [hereinafter CIMP]. The government has responded to Mr. Bolin's objections and argues in support of the condition pertaining to Mr. Bolin's participation in the CIMP (Docket Item 24).

This memorandum is submitted in response to the revised PSR (filed on June 24, 2019), and the conditions proposed by the Court on June 26, 2019 and June 28, 2019. Mr. Bolin incorporates the objections to the special conditions previously filed and objects to the subsequent proposed conditions for the reasons that follow.

*First*, the Court's proposed special condition prohibiting him from posting or uploading to the internet material "that promotes or endorses violence, unlawful

activity, or any groups that espouse such ideas" is over broad and unconstitutionally limits Mr. Bolin's ability to communicate on topics of public concern.

*Second*, the imposition of the CIMP, under the circumstances of this case, is unnecessarily intrusive and unrelated to the underlying crime (lying to a federal agent) that purportedly justifies his need for supervision.

## I.   THE COURT'S PROPOSED SPECIAL CONDITION LIMITING THE TYPE OF INFORMATION MR. BOLIN MAY POST OR UPLOAD TO THE INTERNET WILL CHILL HIS ABILITY TO COMMUNICATE ON TOPICS OF PUBLIC CONCERN.

After the revised PSR was filed, removing the proposed conditions prohibiting Mr. Bolin from associating with known white supremacists and prohibiting him from creating or maintaining a user account on any social networking site, the Court informed the parties that he is considering the following proposed condition:

> *The defendant shall not: post on, or upload to, any Internet website; or transmit, by any electronic means, including but not limited to email and text messaging, and regardless of whether it is accessible by one or more than one person, any statements or other content, whether verbal, pictorial, or otherwise, that promotes or endorses violence, unlawful activity, or any groups that espouse such ideas. That includes forwarding, "liking," or otherwise endorsing such content posted or transmitted by others, in a way that is visible to others or that would tend to further disseminate such messages or content.*

> *The defendant shall not post any messages, photographs, or other content, on any website that promotes or endorses violence or unlawful activity, or that is maintained by an individual or group that publicly promotes or endorses violence or unlawful activity, regardless of the nature of the message or content.*

This provision, as written, would prohibit Mr. Bolin from engaging in the following constitutionally protected activities:

- Sending a text message to a friend expressing his support for the American Revolution, French Revolution, or the Civil War (though apparently calling to express this opinion is acceptable);

- Sending an email to his mother expressing his support for civil disobedience, including Rosa Parks' refusal to sit at the back of the bus in Montgomery, Alabama or the Greensboro Four's refusal to leave a segregated lunch counter in Greensboro, North Carolina;

- Posting a "meme" on Facebook portraying the unlawful use of marijuana in a sympathetic light;

- Posting a message on the Daily Stormer website expressing support for *or opposition to* the organization's white supremacist ideals;

- Expressing, by "tweet," his support for the President of the United States' assertion that, contrary to 52 USC § 30121(a)(2), it is acceptable to receive a "thing of value" from a foreign national in connection with a U.S. election; or

- Sharing with a friend via "WhatsApp" that he agrees with National Security Advisor John Bolton's view that regime change through military action is the appropriate response to totalitarian foreign governments.

The Court should not impose this proposed condition for the same reasons that Mr. Bolin objected to the special condition prohibiting him from associating with "known white supremacists members, known white supremacist affiliates or any other organization that advocated engaging in criminal activity," and the proposed special condition prohibiting him from creating any social media accounts (*see* Docket Item 19, at 15-20). Specifically, this condition is not narrowly tailored and will chill speech of public concern.

Mr. Bolin has already addressed how conditions of this nature will infringe upon his First Amendment right to determine with whom he can speak and what he can communicate. Given the nature of today's civic political culture, the Court's

proposed special condition would prohibit Mr. Bolin from discussing issues of national concern, including immigration or domestic terrorism, for fear that adopting a position will be viewed as advocating or endorsing violence or unlawful activity. For example, comments critical of the President's recent decision to forgo a retaliatory strike again Iran for shooting down a military drone. *See generally*, Michael D. Shear, et al., *Trump Says He Was 'Cocked and Loaded' to Strike Iran, but Pulled Back*, N.Y. TIMES, June 21, 2019, at A1, may be interpreted as an endorsement of violence. While we may not approve of the level of discourse online or even find some of the ideas expressed repugnant, we don't require people to adopt our viewpoint or values before they can sit at the table and join the discussion.

At what point does Mr. Bolin's participation in this discourse, including simply "liking" a comment posted by another, qualify as promoting or endorsing "violence, unlawful activity, or any groups that espouse such ideas?" Perhaps more importantly, who gets to decide?

Mr. Bolin submits that the proposed condition is too vague and subjective to provide meaningful guidance to either Mr. Bolin or a supervising probation officer about what conduct or speech should be considered a violation. Unlike a failed drug test, or the possession of contraband (e.g., child pornography), this condition requires the person monitoring Mr. Bolin's e-mail, texts, and social media activity to make a subjective judgment call on every keystroke about whether the activity should be considered "impermissible/suspicious." *See* Document 16, p. 17. Not only does this condition improperly delegate to probation the task of deciding what

opinions advocate violence, criminal activity, or endorse groups that espouse these ideas, the Department of Probation delegates this responsibility to the private company with whom it has a contract to provide this service.[1]

The proposed condition would prevent Mr. Bolin from using the internet, or any electronic device, to participate in matters of public concern. Moreover, as written, the proposed condition forbids Mr. Bolin from even private communications (if expressed through an electronic device) about these matters.  As Justice Kennedy explained, cyberspace has become the most important place for the exchange of views. *Packingham v. North Carolina*, 582 U.S. ___, ___, 137 S.Ct. 1730, 1735, 198 L.Ed.2d 273, 280 (2017). Surely Mr. Bolin is entitled to participate in these conversations and express his views, regardless of how unpopular. There is no shortage of offensive views being expressed by text, email, or on various social platforms. Such is the cost of a society that values the freedoms enshrined in the First Amendment.

Accordingly, the Court should not impose the proposed condition prohibiting Mr. Bolin from communicating directly to another individual (by text or email) or to multiple people (by posting, "liking," or uploading to the internet) material "that promotes or endorses violence, unlawful activity, or any groups that espouse such ideas."

---

[1] The Probation Department did not respond to defense counsel's e-mailed request for clarification about how the CIMP would operate in this context, e.g., what is being monitored by whom, and what observations would trigger further investigation.

## II.   THE PROPOSED COMPUTER MONITORING CONDITION IS UNJUSTIFIABLY INTRUSIVE AND UNRELATED TO THE CRIME OF CONVICTION

On June 28, 2019, this court proposed the following language regarding the computer monitoring condition:

> The defendant shall not use or possess any computer, data storage device, or any internet capable device unless the defendant participates in the Computer and Internet Monitoring Program (CIMP), or unless authorized by the Court or the U.S. Probation Office. The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that will be used during the term of supervision. The U.S. Probation Office is authorized to install any application as necessary to surveil all activity on computer(s) or connected device(s) owned or operated by defendant. The U.S. Probation Office shall be notified via electronic transmission of impermissible/suspicious activity **that appears to violate Special Condition #3. Such activities shall be promptly brought to the Court's attention.** As triggered by impermissible/suspicious activity, the defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant. This examination shall include but is not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection. Any such monitoring or examinations shall be designed to avoid, as much as possible, reading any privileged information or any private material that is not illegal **or in violation of Condition #3.** (This condition serves the statutory sentencing purposes of deterrence, public protection, and rehabilitation. 18 U.S.C. §3553(a)(2)(B)-(D)).

In support of the similar condition proposed in the revised PSR, the government cites several Second Circuit cases for the proposition that a sentencing court has broad discretion to impose conditions of supervised release (Docket Item 24, at 4-5).  The Court of Appeals, however, has also held that the sentencing court's discretion is not unfettered. *See, e.g.*, *United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019). Indeed, the majority of the cases relied on by the government

demonstrate the *limits* of the Court's discretion. *See, e.g., United States v. Browder*, 866 F.3d 504, 509 (2d Cir. 2017) (computer monitoring condition was unclear because "there was 'no determination of the specific terms of that condition.'"); *United States v. McLaurin* 731 F.3d at 264 (rejecting a condition requiring the defendant to participate in plethysmographic analysis); *United States v. Myers,* 426 F.3d at 130 (rejecting that portion of a special condition requiring the approval of the probation officer for defendant to be alone with his own child).

Other cases put forth by the government also demonstrate that the Court's authority to impose conditions of supervised release is not unfettered. In *Eaglin*, the panel rejected the special condition of supervised release barring the defendant from using the internet and from viewing or possessing legal, adult pornography. 913 F.3d at 95-101. Similarly, in *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002), the panel concluded that a condition prohibiting a defendant from accessing the internet without his probation officer's approval inflicted a greater deprivation on the defendant's liberty than was reasonably necessary.

The government also asserts that there need not be a connection between the offense of conviction and the special condition of supervision (Docket Item 24, at 8). Toward this end, the government relies on *United States v. Bare* 806 F.3d 1011, 1019 (9th Cir. 2015), for the proposition that there only needs to be a nexus between the supervised release condition and one of the statutory factors (Docket Item 24, at 8). The Second Circuit, however, appears to disagree with this analysis. In rejecting the two special conditions in *Eaglin*, the panel found "that the record . . . reveals an

insufficient connection between each of these two conditions and the offense of conviction." 913 F.3d at 95. In the Second Circuit, therefore, there must be a connection between the condition and the offense conduct.

Accordingly, the Court should not impose the condition requiring Mr. Bolin to participate in the CIMP because there is not a sufficient connection between the condition and his offense and because the condition unnecessarily diminishes his reasonable expectation of privacy in his electronic communications.

## CONCLUSION

For the reasons expressed above and in Mr. Bolin's initial objections to the proposed conditions of supervised release, this Court should not impose the special conditions mandating computer monitoring or precluding Mr. Bolin from participating in the modern equivalent of the town square.

**DATED**:     Rochester, New York
          June 28, 2019

                              Respectfully Submitted,


                              /s/ Sonya A. Zoghlin
                              SONYA A. ZOGHLIN
                              Assistant Federal Public Defender
                              Attorney for Thomas Alonzo Bolin
                              28 East Main Street, Suite 400
                              Rochester, New York, 14614
                              Telephone: (585)263-6201


                              Jay S. Ovsiovitch
                              Assistant Federal Public Defender
                              Of Counsel